(29 Misc. Rep. 452.)

### In re LEGGAT.

(Surrogate's Court, Westchester County. November, 1899.)

HABEAS CORPUS—COMMITMENT OF EXECUTRIX FOR DEFAULT—SHERIFF'S RIGHT TO RELEASE.

An executrix was committed by a surrogate for default, with direction to the sheriff to keep her until she had paid certain amounts named in the order, or until discharged according to law. The county judge verbally ordered that she should be brought before him, and ordered her discharged, and made the discharge on the order of commitment. An order for a writ of habeas corpus and a writ were signed by the county judge, and filed a few days afterwards. The writ was not served on the sheriff. however, and he made no return thereto showing by what authority the prisoner was held, etc., as required by Code Civ. Proc. §§ 2017, 2019, 2026, and no notice of the writ was served on the persons interested in the prisoner's detention, as required by section 2038, before she could be discharged. Nor did the order for her discharge recite that such notice had been given. *Held* that, the acts of the county court being without jurisdiction, the sheriff was not justified in releasing her and making no effort to retake her.

In the matter of the application of Ophelia Leggat to punish William V. Malloy, sheriff of Westchester county, for contempt of court. Application granted.

Jacob Marks, for petitioner.

Justus A. B. Cowles, for sheriff.

SILKMAN, S. This is a proceeding to punish the sheriff of Westchester county for a civil contempt, it being alleged that he willfully neglected and violated his duty, and willfully violated and disobeyed the order of this court, and commitment entered upon said order, which required the sheriff to keep and detain Susie Slater Weeks, and commit her to the common jail of Westchester county, and keep and detain her therein in his custody until she should have paid certain amounts named in said order of commitment, or until she was discharged according to law, by permitting said Susie Slater Weeks to escape from the jail of Westchester county while she was in his custody by virtue of said mandate. A proceeding was had in this court for the settlement of the account of Susie Slater Weeks as executrix of the last will and testament of Lauretta Slater, deceased. This proceeding involved a great deal of labor, and, after a lengthy hearing, resulted in a decree dated the 25th day of February, 1899. This decree found and determined the balance in the hands of the executrix, and with which she was chargeable with distribution of, to be the sum of $1,161.68. This sum she was directed to distribute. She was not directed to pay anything personally, either by way of costs or disbursements. She, however, was not allowed commissions. This decree was duly served upon the executrix, Susie Slater Weeks. Upon the affidavits showing that the decree was so served, and had not been complied with, an order to show cause was made, returnable on the 8th day of April, 1899, why she should not be punished for contempt in failing to obey said decree, and upon the return of the order to show cause an order was made, dated the 8th day of April, 1899, adjudging her guilty of contempt, and directing that a precept be issued to the sheriff to take and commit her to the common jail of Westchester county, and to detain her until she should pay the sums required to be paid under said decree. A warrant reciting all the proceedings was thereupon issued to the sheriff, and in obedience to said warrant the said sheriff took said Susie Slater Weeks into his custody, and kept her there until the 31st day of May, when she was released under circumstances following: On said 31st day of May the county judge who was then holding court verbally directed one Moore, deputy sheriff, who was attending upon the court, to produce said Susie Slater Weeks before him. Moore went downstairs to the sheriff's office, and stated to one Frank Jarvis, who was in charge of the office, the direction of the county judge. Jarvis handed Moore the certified copy of the order for the commitment and the commitment, and told Moore to procure the prisoner from the jailer. Moore then went to the jail, obtained the prisoner, and presented her at the bar before the county judge, and delivered the commitment and the certified copy of the order for commitment to the clerk of the court. Moore swears that in a few minutes the judge stated in open court that the prisoner was discharged, and that said clerk thereupon delivered to him the order of commitment, with the words indorsed thereon in the hand-

writing of the judge: "Discharged May 31, 1899. Smith Lent, County Judge." The prisoner was thereupon allowed to go. Moore then returned to the sheriff's office, and reported the fact to Jarvis, and returned to him the papers. No writ of habeas corpus was served upon the sheriff. An order for a writ and a writ signed by the county judge, dated the 29th day of May, 1899, were, however, filed in the county clerk's office on the 31st day of May, 1899, and an order discharging the prisoner, signed by Smith Lent, county judge of Westchester county, bearing date May 31, 1899, was filed in the office of the clerk on the 1st day of June, 1899. This order was never served upon the sheriff. It contains no recital of notice having been given to the parties interested in continuing the confinement. No return is made by the sheriff, as required by statute, and no action whatever was taken except what has been recited.

The practice in habeas corpus proceedings is statutory, and every detail regulated. Application must be made by petition in writing, and be verified. The person upon whom the writ has been served must state plainly and unequivocally in his return whether he has the prisoner in his possession, the authority and true cause of the imprisonment or restraint, setting it forth at length, and, if the prisoner was detained by virtue of a mandate or other written authority, the copy must be annexed to the return, and upon the return the original must be produced. The return must be signed by the person making it, and, unless he is a sworn public officer, and makes his return in his official capacity, it must be verified by oath. Code Civ. Proc. §§ 2017, 2019, 2026. Where it appears, from the return to the writ, the prisoner is in custody by virtue of a mandate, an order for his discharge will not be made "until notice of the time when and the place where the writ is returnable, or to which the hearing has been adjourned, as the case may be, has been either personally served eight days previously, or given in such * * * manner and for such previous length of time as the court or judge prescribes, as follows: (1) Where the mandate was issued or made in a civil action or special proceeding, to the person who has an interest in continuing the imprisonment or restraint, or his attorney. * * *" Id. § 2038. The sheriff violated his plain duty to make the return required by statute. The conduct of the sheriff's office was grossly negligent and careless, so much so that it constituted in law, constructively, a willful disregard of the mandate of the surrogate's court, and is, therefore, a contempt, unless he be protected by the subsequent order of the county judge. I have no doubt that, if the writ of habeas corpus had been served upon the sheriff; if he had made his return, and the order of the county judge had so recited, and also recited the giving of the notice, as required by section 2038, and directed the discharge of the prisoner,—the sheriff would be justified in obeying the order, even though the notice had not been given to those interested in continuing the confinement; but the order of the county judge contained no recitals showing the jurisdiction of the court. It is, therefore, for the sheriff to show the existence of facts giving jurisdiction to the county judge to make the order. The county judge declares in his

order that the commitment of the surrogate was void upon its face.
If this were so, the sheriff had no right whatever to have arrested
the prisoner in the first instance, and undoubtedly would be liable
for false imprisonment for holding the prisoner under a void man-
date. The sheriff, however, makes no claim that the mandate of
the surrogate was void, and rests his defense solely upon the plea
that the order of the county judge justified his conduct in releasing
the prisoner. The office of sheriff is a most responsible one, and
by reason of its responsibility and the personal liabilities connected
with it the incumbent has always been remunerated to a larger ex-
tent than any other county officer, either through the medium of
fees or salary or both. The sheriff of Westchester county is paid
by salary and fees. His subordinates are paid by the county. The
act relating to his office authorizes the employment of a counsel to
be paid by the county. The sheriff owes a duty and responsibility,
and is liable for the failure in its performance, to persons having
an interest in the enforcement of the mandate of the court. It re-
quires something more than the signature of the judge to relieve the
sheriff from responsibility. The mandate of the surrogate required
him, in the interest of certain persons, who were entitled to cer-
tain moneys from the prisoner, to hold the prisoner until she paid
the amount adjudged to be paid. The release of the prisoner by the
sheriff was not in pursuance of an order, but merely an indorsement
by the county judge upon the original commitment, which was cer-
tainly not the order contemplated by the statute. Subsequently a
formal order was made; at what particular time (whether the day
of its date or later) is not important. It remains for the sheriff
to show the jurisdictional facts. They not having been recited in
the order of the county judge, he must show that a proper return
was made, and that the persons who were interested in continuing
the confinement, or their attorneys, were properly notified of the
hearing of the habeas corpus. Bullymore v. Cooper, 46 N. Y. 236;
Shaffer v. Riseley, 114 N. Y. 23, 20 N. E. 630. It is conceded that
the eight-days notice provided for in the section was not given, and
that no return was made. No order of the judge prescribing any
other notice is produced, nor is there any affidavit showing the giv-
ing of any notice. We must assume that no notice was given. With-
out such notice the county judge was without power to make the
order of discharge, and therefore the sheriff must take the conse-
quences for his negligence in releasing the prisoner in this manner
without authority, disobeying the mandate of the surrogate's court.
That this court has sufficient power to punish for the purpose of
indemnifying the parties and preserving the dignity of its mandate
is beyond question. Code Civ. Proc. § 2284; Van Valkenburgh v.
Doolittle, 4 Abb. N. C. 72; People v. Rochester & S. L. R. Co., 76 N.
Y. 294.

There is no suggestion that the sheriff has made any effort to re-
take into his custody the prisoner who has been released, and the
distributees under the surrogate's decree seem to have lost perhaps
the only effectual remedy which they had against the defaulting
executrix. The petitioner is without blame. She has endeavored

diligently, through her counsel, to collect the money to which she is justly entitled. Through the misconduct of the sheriff's office, she is deprived of one of her remedies. Under the circumstances I think a fine of $250 should be imposed upon the sheriff, and I so direct. The sheriff, however, in case that he is not willing to accept the decision of this court, should have a stay to enable him to review the order to be entered herein.

Decreed accordingly.

ROMANOSKI v. UNION RY. CO.

(City Court of New York, General Term. January 4, 1900.)

1. TORTS—NEGLIGENCE—NEW PARTIES.

Where plaintiff was justified in believing that only defendant wronged and injured her, the discovery upon the trial that another party and defendant were interested in the subject-matter which caused plaintiff's injury, which interests were so interwoven as to become apparently identical, and probably inseparable, so far as they concerned plaintiff's rights, entitles plaintiff to bring such party in as defendant.

2. SAME—SERVICE OF AMENDED COMPLAINT.

To make a joint wrongdoer a party defendant to a pending action, it is necessary to serve on both the existing defendant and such joint wrongdoer a copy of the summons and complaint so amended as to contain the proper and necessary allegations charging both with the commission of the tort in question, with leave to them to answer or demur.

3. SAME—NOTICE OF TRIAL.

When the trial of a case has been entered into, and is discontinued to permit the bringing in of another party as a defendant, it is necessary to serve new notice of trial.

Appeal from special term.